UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ITASKA BANKS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 4:14cv0245 TCM |
|  | ) |  |
| MEGAN J. BRENNAN,[1] | ) |  |
| Postmaster General, United States | ) |  |
| Postal Service, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM AND ORDER

This action is before the Court on the opposed motion of Megan J. Brennan, Postmaster General, United States Postal Service (USPS), for summary judgment on the claims of Plaintiff, Itaska Banks, that she has been discriminated against because of her disability, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*

## Background

The facts relevant to a resolution of the pending motion are as follows.

From March 1986 until November 2012, Plaintiff, Itaska Banks, worked as a mark-up clerk for the Computerized Forwarding Unit (CFU) of the USPS in St. Louis. (Def.'s Stat. ¶ 1-2,[2] ECF No. 32.) She was then, and is now, considered disabled by osteoarthritis. (See

___

[1]Megan J. Brennan became Postmaster General of the United States in February 2012 and will be substituted as Defendant. See Fed.R.Civ.P. 25(d).

[2]In accordance with Local Rule 7(E), Defendant submitted a statement of uncontroverted material facts in support of her motion for summary judgment, setting forth each factual allegation in a separately numbered paragraph with supporting citations to the record. See

Def.'s Mem. at 6, ECF No. 31 (stating that Defendant does not dispute that Plaintiff has a disability for purposes of the instant motion)). Specifically, she cannot stand for longer than ten minutes. (Def.'s Ex. C, ECF No.32-3.) She does not have any difficulty walking. (Pl.'s Depo. at 120, ECF No. 32-9.) Throughout this period, Plaintiff used a rest bar and had a "special" chair to help her perform her duties. (Def.'s Stat. ¶ 5.)

In approximately November 2011, all thirty to forty employees in the CFU were told that the unit work was being transferred to Indianapolis, no employees were to be transferred with the work, and the St. Louis CFU would be closed. (Pl.'s Depo. at 22, 39-40; Def.'s Stat. ¶ 6-7.) In September 2012, all St. Louis employees of the CFU were told they would be transferred to a Tour One[3] Automation Unit when their current unit closed in November of that year. (Def's Stat. ¶ 7; Def.'s Ex. A, ECF No. 32-1.) Plaintiff received a letter advising her that, because the CFS unit was closing, she would be considered "an unassigned regular and involuntarily reassigned" employee as of the close of business on November 24, 2012. (Def.'s Ex. A.) As such, she was "encouraged to bid on posted vacancies for which [she] [was] eligible." (Id.) Absent a successful bid, she would be assigned to any vacant duty

---

E.D.Mo. L.R. 7(E). This Local Rule also requires that any "memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exits" and shall also include supporting citations. Id. "*All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party*." Id. (emphasis added). See e.g. **Tramp v. Assoc. Underwriters, Inc.**, 768 F.3d 793, 799 (8th Cir. 2014) (finding no error in district court's application of similar local rule when ruling on motion for summary judgment); **Robinson v. Am. Red Cross**, 753 F.3d 749, 754-55 (8th Cir 2014) (same).

[3]Tour One refers to the shift from 10:00 p.m. to 6:30 a.m.

assignment in accordance with the applicable collective bargaining agreement. (Id.) At one point, Russell Thouvenot, a USPS officer, spoke to the employees and informed them that if they elected not to be transferred they could apply for early retirement or disability or bid on an open job. (Pl.'s Dep. at 139-40.) It was Thouvenot who initially told the CFU employees that the unit was going to close. (Id. at 23.)

The job at the Automation Unit was that of a Mail Processing Clerk. (Def.'s Stat. ¶ 8.) The duties of this job included, among other things, "[o]n a rotation basis," loading mail onto automated equipment, culling out non-processable items, monitoring the flow of mail to ensure a continuous feed, sweeping separated mail from the bins/stackers, and clearing jams. (Pl.'s Compl. Ex. at 15, ECF No. 1-1.) The qualifications for the position required "arduous exertion involving prolonged standing." (Id.) Plaintiff's standing restrictions prevented her from doing the job. (Def.'s Ex. D, ECF No. 32-4.) Debra Collins, with the USPS District Reasonable Accommodation Committee, wrote Plaintiff in December 2012 that she then had four options. (Id.) First, Plaintiff could identify a position with the USPS that was suitable for voluntary reassignment. (Id.) If she found such a position, she had to submit a written request and be medically qualified for the job. (Id.) Second, if she thought reasonable accommodations would allow her to perform the essential functions of her position or would assist in her reassignment to a suitable position, she could make a written request for consideration by the Committee. (Id.) Third, she might apply for optional or disability retirement if eligible. (Id.) Fourth, she could resign. (Id.)

During a subsequent conversation with Ms. Collins, Plaintiff asked her if she was going to help Plaintiff find a position that would accommodate her. (Pl.'s Dep. at 71-72.) Ms. Collins replied that "it didn't work that way." (Id. at 72.) Plaintiff would have to find and get the position and then Ms. Collins would try to accommodate her. (Id.)

Later in December, Ms. Collins wrote Plaintiff about a job they had discussed over the telephone. (Def.'s Ex. E-1, ECF No. 32-5.) The job was as a Sales, Services/Distribution Associate (SSDA), or window clerk, position at the O'Fallon Post Office. (Id.) She further informed Plaintiff that she could request voluntary reassignment to the position if she was medically qualified to perform its essential functions. (Id.) The attached job description listed continuous standing as a functional requirement. (Id. at 7-8.) Plaintiff went to the O'Fallon Post Office and interviewed for the job. (Pl.'s Dep. at 72.) She was told by the manager that the manager could not use her because she would be unable to do "the back part of the job." (Id. at 72, 73.) This part required that she stand and "throw" flats. (Id. at 72, 84, 86.) According to the manager, it could not be done by using a rest bar because the person had to move around to get to all the bins. (Id. at 84.) Plaintiff agreed, but considered an accommodation to be that she would not be required to throw the flats. (Id. at 84-87.)

In January 2013, Ms. Collins wrote Plaintiff about two job postings: one for the position of Time and Attendance Clerk and one for the position of Data Collection Tech. (Def.'s Ex. F, ECF No. 32-7.) Plaintiff applied for both, but was not interviewed for either.

(Pl.'s Dep. at 89.) She does not think she has the necessary background experience for either position. (Id.)

Later that month, Plaintiff successfully bid on a window clerk position at the Maryville Gardens Post Office. (Def.'s Stat. ¶ 25.) The job would have been hers had she passed a scheme test requiring that she memorize a random selection of house numbers and street addresses. (Pl.'s Dep. at 90-93.) Plaintiff did not pass the test. (Id. at 90.) She does not attribute her failure to her disability. (Id. at 93.)

Between the time Plaintiff bid on the Maryville job and the time she did not pass the test, she informed Ms. Collins of her apparently successful bid. (Pl.'s Dep. at 89-90.) Consequently, Ms. Collins closed her file. (Def.'s Ex. G, ECF No. 32-8.)

Plaintiff successfully bid for a window clerk position in May 2014 at the Southwest Post Office. (Def.'s Stat. ¶ 28.) This position did not require a scheme test. (Pl.'s Dep. at 96.) It does require that she take incoming mail and sell stamps and services. (Id. at 31.) She asked for an accommodation of not having to stand and was timely given a stool. (Id. at 32.) She is still employed at that post office. (Def.'s Stat. ¶ 30.)

In addition to the foregoing positions, Plaintiff also bid for a registry job in May 2014. (Pl.'s Dep. at 97, 104, 108.) She was not successful. (Id. at 98.) She was told that she could not perform that job due to her medical restrictions and that the job had the same requirements as the mail processing clerk position. (Id. at 98, 113, 114.) Her friend who works in the registry department had told her that she could do the registry job and that rest

bars were permitted. (Id. at 98-99, 117.) Her friend is a clerk in the department and is not a supervisor. (Id. at 99.)

Between the closing of the CFU and her successful bid for the Southwest Post Office position, Plaintiff filed a charge of discrimination with the USPS Equal Employment Opportunity Office. (Pl. Am. Compl. ¶ 4, ECF No. 18.) She alleged in this charge that she was discriminated against because of her disability when the USPS failed to find her a suitable position after the CFU closed. (Pl.'s Compl. Ex. at 1.) This is the only EEO claim she has filed. (Pl.'s Dep. at 149, 155, 156-57, 162, 168, 169, 177, 178; Def.'s Stat. ¶ 33-34.) She is not challenging as discriminatory the need for the reassignment in 2012, but is challenging USPS' failure to find her a job that accommodated her disability. (Id. at 38, 170; Def.'s Stat. ¶ 32.) USPS had not denied any specific request by Plaintiff for a reasonable accommodation. (Def.'s Stat. ¶ 31.) She is seeking damages for the eighteen months after the closure of the CFU and her beginning work at the Southwest Post Office. (Pl.'s Dep. at 173-74.)

In her second amended complaint, Plaintiff also alleges that she has requested "reasonable accommodations for [her] impairments which [USPS] has not only refused but further demanded that Plaintiff attempt to perform employment duties that [USPS] gave Plaintiff as a way to punish Plaintiff as a way of retaliation." (Pl's Am. Compl. ¶ (8)(p)). Plaintiff explained in her deposition that she felt she was being retaliated against "when [she] could not earn a living anymore. . . . Because there was ample work for me to do, and, yet,

I was not allowed to do it." (Pl.'s Dep. at 145.) The reasonable accommodation she refers to is a "reasonable accommodation for any job that [she] would have." (Id. at 170.) She has not filed an EEO claim for retaliation. (Id. at 147.)

USPS moves for summary judgment, arguing that Plaintiff wants, but the Rehabilitation Act does not require, that it find her another position she could perform after the CFU was closed. Moreover, USPS made a reasonable effort to assist her in finding an appropriate position and provided her with reasonable accommodations when asked. USPS further argues that insofar as Plaintiff raises other claims, they are barred by her failure to exhaust administrative remedies. In opposition, Plaintiff submits no evidence, not even an affidavit, and asserts in her memorandum only her belief that there were assignments she could perform that USPS knowingly failed to transfer her to and that USPS discriminated against her by not informing her of what reasonable accommodations could be made to available positions. (Pl.'s Mem. at 4.) She also argues that she has established a prima facie case of disparate treatment because USPS has not identified any other employees suffering from osteoarthritis or a similar condition that were transferred to a mail processing position in the Automation Unit. (Id. at 3.)

**Discussion**

Summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure "is proper when the evidence, viewed in the light most favorable to the non-moving party, demonstrates that no genuine issue of material fact exists, and that the moving party is

entitled to judgment as a matter of law." **Rester v. Stephens Media, LLC**, 739 F.3d 1127, 1130 (8th Cir. 2014). Accord **MidAmerican Pension and Emp. Benefits Plans Admin. Comm. v. Cox**, 720 F.3d 715, 718 (8th Cir. 2013). The existence of a factual dispute is not enough alone to avoid entry of summary judgment; "rather, the dispute must be outcome determinative under the applicable law." **Hammer v. City of Osage Beach, Mo.**, 318 F.3d 832, 837 (8th Cir. 2003). "To establish a genuine issue of material fact, [the movant] 'may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in [the movant's favor].'" **Fatemi v. White**, 775 F.3d 1022, 1040 (8th Cir. 2015) (quoting Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005)). And, contrary to Plaintiff's position, "[t]here is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." **Torgerson v. City of Rochester**, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc).

Disparate Treatment. The Rehabilitation Act is the exclusive remedy for a federal employee alleging disability-based discrimination. **Ellis v. Donahoe**, 2014 WL 7335161, *1 n.2 (E.D. Mo. Dec. 19, 2014). "The Rehabilitation Act provides, 'No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination . . . under any program or activity conducted by . . . the [USPS].'" **Peeples v. Potter**, 354 F.3d 761, 765 (8th Cir. 2004) (quoting 29 U.S.C. § 794(a)) (all but last alterations in original); accord **Robinson v. Potter**, 453 F.3d 990, 992-93 (8th Cir. 2006).

"Discrimination under . . . the Rehabilitation Act encompasses both disparate treatment because of a disability and failure to provide reasonable accommodations to a qualified individual's known disability." **Withers v. Johnson**, 763 F.3d 998, 1003 (8th Cir. 2014). "The former requires proof of discriminatory intent, while the latter does not." **Id.**

Without direct evidence of discriminatory intent, as in the instant case, "the familiar three-step *McDonnell Douglas* approach is applied." **Peeples**, 354 F.3d at 766. Under that approach, "plaintiff must first present a prima facie case of intentional discrimination. The burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for its action. If defendant meets that minimal burden, plaintiff must show that the proffered nondiscriminatory reason is merely a pretext for unlawful . . . discrimination." **Cody v. Prairie Ethanol, LLC**, 763 F.3d 992, 998 (8th Cir. 2014).[4] Assuming, without deciding, that Plaintiff has established a prima facie case of discrimination, the USPS has articulated a legitimate nondiscriminatory reason for the eighteen-month gap in Plaintiff's placement in a position, i.e., that there was no open position that Plaintiff successfully bid for and for which she could be reasonably accommodated.[5] Plaintiff counters that "[b]y knowingly

---

[4]**Cody** is a case brought under the Americans with Disabilities Act (ADA). "'[D]ecisions interpreting either the ADA or the Rehabilitation Act are applicable and interchangeable to claims under each statute.'" **Withers**, 763 F.3d at 1003 (quoting Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013)). The only exception – the Rehabilitation Act requires that the disability is the *sole* impetus for the discrimination whereas the ADA requires only that the disability be a motivating factor, see **Peeples**, 354 F.3d at 767 n.5 – does not favor Plaintiff.

[5]Plaintiff's reasonable accommodation argument is addressed below.

transferring [her] into a unit she could not physically perform [Plaintiff] received disparate treatment from the USPS." (Pl.'s Mem. at 3.)

"When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait . . . actually motivated the employer's decision.'" **Reeves v. Sanderson Plumbing Products, Inc.**, 530 U.S. 133, 141 (2000) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)). It is undisputed that all employees in the CFU were transferred to the Automation Unit when the CFU closed. There is no evidence that Plaintiff's disability motivated USPS' transfer decision.

Plaintiff further argues that USPS must identify another employee who suffers from osteoarthritis or a similar condition and who was transferred to the Automation Unit. Plaintiff misapprehends the burden of proof. It is the plaintiff in a Rehabilitation Act case has the burden of proving that she and the other employee cited in support of claim are "similarly situated in all relevant respects." **Cody**, 763 F.3d at 998. Plaintiff has not named any USPS employee for whom an exception was made when their entire unit was closed and all the employees transferred to another unit.

Reasonable Accommodation. "The failure to make reasonable accommodations in the employment of a disabled employee is a separate form of prohibited discrimination." **Peebles**, 354 F.3d at 766. "Under the [Rehabilitation] Act and its regulations, such discrimination occurs if 'a covered entity [does] not . . . make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee

with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business.'" **Id.** (quoting 29 C.F.R. § 1630.9(a)) (alterations in original). "[I]t is not the employer's discriminatory intent in taking adverse employment action against a disabled individual that matters. Rather, discrimination occurs when the employer fails to abide by a legally imposed duty. The known disability triggers the duty to reasonably accommodate and, if the employer fails to fulfill that duty, [the Court] do[es] not care if he was motivated by the disability." **Id.** at 767.

Plaintiff received accommodations from the USPS during the twenty-six years she worked in the CFU. She has received accommodations from the USPS since she began work at the Southwest Post Office, and is still receiving them. She does not claim that the closing of the CFU was discriminatory and does not dispute that there are no measures that the USPS could take to accommodate her so she could perform the work of a mail processing clerk in the Automation Unit – the position and unit to which all CFU employees were transferred. Rather, Plaintiff contends that the USPS failed in its duty under the Rehabilitation Act to identify positions that she could perform if given reasonable accommodations.

The Rehabilitation Act "does not[, however,] require affirmative action in favor of individuals with disabilities." **Rehrs v. Iams Co.**, 486 F.3d 353, 358 (8th Cir. 2007) (internal quotations omitted). Plaintiff's position having been eliminated for reasons unrelated to her disability, the USPS is under no obligation to find Plaintiff another job. The USPS did not violate the Rehabilitation Act when placing the onus on Plaintiff to first identify a position

suitable for voluntary reassignment before the question would be reached of whether reasonable accommodations could be made in order for Plaintiff to assume that position. See e.g. **Cravens v. Blue Cross and Blue Shield of Kansas City**, 214 F.3d 1011, 1020 (8th Cir. 2000) (reaching question of reasonable accommodation when *employee* identified three positions to which she contended she should have been reassigned). And, although Plaintiff "believes there were assignments available that Plaintiff could perform at the time of transfer," this conclusory statement in her memorandum, unsupported by any evidence, is insufficient to establish a genuine issue of material fact as to whether the USPS failed in its duty to reasonably accommodate Plaintiff by identifying such positions for her.[6] See **Rodgers v. City of Des Moines**, 435 F.3d 904, 908 (8th Cir. 2006) (conclusory statements insufficient to establish material question of fact).

Plaintiff did identify at least two positions. According to her deposition testimony, she could have performed the duties of the position at O'Fallon Post Office had the requirement she throw flats be eliminated. "'The employer's judgment about an essential job function is considered highly probative,'" **Minnihan v. Mediacom Comm'ns Corp.**, 779 F.3d 803, 812 (8th Cir. 2015) (quoting Knutson v. Schwan's Home Serv., Inc., 711 F.3d 911, 914 (8th Cir. 2013)), but not conclusive, **id.** When applying for the O'Fallon position, Plaintiff was told her duties included throwing flats and that this could not be performed if

---

[6]The Court notes that the reasonableness of USPS' requirement that Plaintiff first identify a job before the question of accommodation is reached is illustrated by Plaintiff identifying three jobs that it turned out she could not perform for reasons unrelated to her disability.

she needed to use a rest bar to stand. Plaintiff has advanced no argument or supporting evidence that this duty was not an essential job function. Instead, she argues that the duty could be eliminated. "[A] disabled individual is not entitled to an accommodation of [her] choice." **Rehrs**, 486 F.3d at 359. And, "[a]n employer 'need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee.'" **Hill**, 737 F.3d at 1218 (quoting Kallail v. Alliant Energy Corporate Servs., Inc., 691 F.3d 925, 932 (8th Cir. 2012)).

Plaintiff also identified a registry job as being appropriate. In response to being informed that the job had the same requirements as the mail processing clerk position – a position which she does not dispute she could not perform even with any accommodations – she testified in her deposition that a friend told her she could do the job by using a rest bar. "At summary judgment, [however,] the requisite 'genuine dispute,' Fed.R.Civ.P. 56(a), must appear in *admissible* evidence." **Crews v. Monarch Fire Protection Dist.**, 771 F.3d 1085, 1092 (8th Cir. 2014). Hearsay, e.g., a friend's description of how a job is performed, cannot be used to defeat a motion for summary judgment. **Id.**; accord **Jones v. McNeese**, 746 F.3d 887, 889 (8th Cir. 2014).

USPS has shown, with admissible evidence, that it reasonably accommodated Plaintiff after she identified a position for which she was otherwise qualified.

Remaining Claims. Plaintiff raises in her second amended complaint other claims of discriminatory events, including of retaliation. It is undisputed that she has filed only one EEO claim, and the subject of that claim is addressed above.

"Plaintiffs in discrimination cases against government agencies must exhaust their administrative remedies prior to filing a civil action in federal district court."  **Watson v. O'Neill**, 365 F.3d 609, 614 (8th Cir. 2004); accord **Burkett v. Glickman**, 327 F.3d 658, 660 (8th Cir. 2003).  These administrative remedies include first seeking relief in the agency that allegedly discriminated against the complainant.  **Brown v. General Servs. Admin.**, 425 U.S. 820, 832 (1995); 29 C.F.R. § 1614.105(a) (setting 45-day limit for initial contact with agency's EEO counselor).  If the matter is not resolved at this initial stage, the agency's EEO counselor must inform the complainant in writing of the right to file a discrimination compliant with the agency within fifteen days of receipt of the notice.  29 C.F.R. § 1614.106(a), (b); accord **Patrick v. Henderson**, 255 F.3d 914, 915 (8th Cir. 2001).  Once a complaint is filed, the agency shall conduct an investigation, see 29 C.F.R. § 1614.108, and hold a hearing if requested by the complainant, 29 C.F.R. §§ 1614.109(a), (e).  If, as in the instant case, the complainant requests a final decision without a hearing, the agency shall issue that decision within sixty days and inform her of the right to file a civil action in federal district court.  29 C.F.R. § 1614.110.

Having failed to present to the USPS any other claims of discrimination raised in her second amended complaint, Plaintiff has failed to establish a genuine issue of material fact as to those claims.

## Conclusion

In response to the USPS' evidence that it did not discriminate against Plaintiff because of her disability during the eighteen months at issue, Plaintiff has fatally failed to "substantiate [her] allegations with sufficient probative evidence that would permit a finding in [her] favor." **Fatemi**, 775 F.3d at 1040 (internal quotations omitted) (second alteration in original). Accordingly,

**IT IS HEREBY ORDERED** that Megan J. Brennan, Postmaster General, United States Post Office, is hereby substituted as Defendant.

**IT IS FURTHER ORDERED** that the motion of Megan J. Brennan, Postmaster General, United States Postal Service, for summary judgment is **GRANTED**. [Doc. 31]

An appropriate Order of Dismissal shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  6th  day of April, 2015.